UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| TAMMY L. HULL, | ) | Case No. CV 05-5516-JTL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PROCEEDINGS**

On August 2, 2005, Tammy L. Hull ("plaintiff") filed a Complaint seeking review of the Commissioner's denial of her application for supplemental security income. On August 24, 2005, the parties filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. Thereafter, on February 8, 2006, defendant filed an Answer to Complaint. On May 22, 2006, the parties filed their Joint Stipulation.

The matter is now ready for decision.

///

///

**BACKGROUND**

On December 14, 1995, plaintiff filed an application for supplemental security income. (Administrative Record ["AR"] at 38-39). In her application, plaintiff claimed that, beginning on May 1, 1989, nerve damage on her left foot and arthritis in her right ankle prevented her from working. (AR at 41). The Commissioner denied plaintiff's application for benefits both initially and upon reconsideration. (AR at 55, 65-68). Thereafter, plaintiff's application was dismissed. (AR at 20).

On May 1, 2002, plaintiff filed the instant application for supplemental security income. (AR at 247-50). In her application, plaintiff claimed that, beginning on June 20, 2000, the following impairments prevented her from working: lower back injury, herniated disc, narrowing of the spine, a pin in her right ankle, arthritis, and sharp pain. (AR at 257). The Commissioner denied plaintiff's application for benefits both initially and upon reconsideration. (AR at 205, 214-17). Thereafter, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 218).

On March 19, 2003, the ALJ conducted a hearing in West Los Angeles, California. (AR at 478-89). Plaintiff appeared at the hearing with counsel and testified. (AR at 481-87). Sandra Schneider, a vocational expert, also appeared and testified. (AR at 487).

On April 15, 2003, the ALJ issued her decision finding plaintiff disabled and granting her benefits. (AR at 210-13). On its own motion, the Appeals Council reviewed the ALJ's decision and, on September 16, 2003, remanded the case to the ALJ for further proceedings and a new decision. (AR at 231-33). In the Order of

1  Appeals Council Remanding Case to Administrative Law Judge ("Remand
2  Order"), the Appeals Council found that the ALJ erred in failing to
3  describe the maximum amount of work-related activity that plaintiff
4  could perform and failed to provide an accurate accounting of
5  plaintiff's abilities, limitations, and restrictions.  (AR at 235).
6  On remand, the Appeals Council ordered the ALJ to conduct a
7  supplemental hearing; assess the opinions of treating, examining, and
8  non-examining physicians; evaluate evidence provided by medical
9  sources and make a residual functional capacity assessment, taking
10 into account any exertional and non-exertional limitations; provide
11 appropriate rationale with specific references to evidence of record
12 in support of the assessed limitations; provide an assessment of
13 function by function residual functional capacity based on the
14 evidence of record; obtain medical expert testimony; and obtain
15 supplemental vocational evidence.  (AR at 236).
16     On July 27, 2004, the ALJ conducted a supplemental hearing in
17 Pasadena, California.  (AR at 447-77).  Plaintiff appeared at the
18 hearing with counsel and testified.  (AR at 452-77).  Susan Green, a
19 vocational expert, also appeared but did not testify.  (AR at 447).
20     On February 8, 2005, the ALJ issued his decision denying
21 benefits.  (AR at 20-28).  In his decision, the ALJ concluded that
22 plaintiff suffered from the severe impairment of low back injury. (AR
23 at 21).  The ALJ also determined that this impairment did not meet or
24 equal any of the criteria contained in the Commissioner's Listing of
25 Impairments, 20 C.F.R. Section 404, Subpart P, Appendix 1.  (Id.).
26 While the ALJ determined that plaintiff could not perform her past
27 work, the ALJ found that plaintiff retained the physical capacity to
28 perform a full range of light work not significantly compromised by

nonexertional limitations. (AR at 26). Ultimately, the ALJ found that plaintiff was not disabled pursuant to the Social Security Act. (Id.).

On February 14, 2005, plaintiff filed a timely request with the Appeals Council for review of the ALJ's decision. (AR at 15). On June 22, 2005, the Appeals Council affirmed the ALJ's decision. (AR at 8-10).

**PLAINTIFF'S CONTENTIONS**

Plaintiff makes the following claims in the Joint Stipulation:

1. The ALJ failed to properly evaluate plaintiff's pain, exertional limitations, and use of medication, as well as the possible side effects of the medication.

2. The ALJ failed to properly evaluate plaintiff's subjective symptoms and rationale in accordance with the disability regulations.

3. The ALJ failed to question the vocational expert and evaluate important testimony that should have been given.

4. The ALJ improperly used the Appendix 2 Grid Rules.

5. The ALJ failed to consider treating and examining source opinions under the social security rules.

6. The ALJ failed to properly evaluate plaintiff's mental status.

7. The ALJ failed to evaluate the combined effects of all impairments.

///
///
///

**STANDARD OF REVIEW**

The Court reviews the ALJ's decision under 42 U.S.C. § 405(g) to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Desrosiers v. Secretary of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the ALJ's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

**DISCUSSION**

**A.   The Sequential Evaluation**

The Commissioner has established a five-step sequential process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920 (1991); Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). At step one, disability benefits are denied if the Commissioner determines that the claimant is engaged in substantial gainful activity. Id. at 140. At step two, the Commissioner evaluates whether the claimant has a medically severe impairment which significantly limits his physical or mental ability to do basic work activities. Id. at 140-41. Step three requires a consideration of

whether the claimant's impairment is equivalent to one of a number of listed impairments that are so severe as to preclude substantial gainful activity. Bowen, 482 U.S. at 141. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. Id. If the impairment is not one that is conclusively presumed to be disabling, step four of the evaluation determines whether the impairment prevents the claimant from performing work he has performed in the past. Id. at 141. If the claimant cannot perform his past work, the fifth and final step determines whether he is able to perform other work in the national economy in light of his age, education and work experience. Id. at 142. The claimant is entitled to disability benefits only if he is not able to perform such work. Id.

**B.   The ALJ's Consideration of Treating and Examining Source Opinions**

Plaintiff contends that the ALJ failed to consider the treating and examining source opinions. Although plaintiff does not specify the physician or the specific allegations of error, the Court presumes that plaintiff refers to the opinion of Edward G. Stokes, M.D. and Alana K. Skanzy, D.C., who treated plaintiff and rendered assessments.[1]

---

[1] As the ALJ noted in his decision, Frederick C. Workman, M.D., an orthopedic surgeon, examined plaintiff on September 5, 2000. (AR at 22, 393-94). Dr. Workman's "detailed report," in which he opined that plaintiff had a limited range of motion in her back and could possibly return to work if she performed back exercises, was not included in the record and only summarized in Dr. Stokes' Review of the Medical Records. (AR at 393-94). Additionally, Frank Perez, D.C., and Mary Simone, D.C., also examined plaintiff and their reports were reviewed by Dr. Stokes, which he presumably incorporated in his report. (AR at 358, 379-80, 401-03).

1    A treating physician's opinion is not conclusive as to either
2    functional limitations or the ultimate issue of disability. See
3    Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). The proper
4    weight that an ALJ should give to a treating physician's opinion
5    depends on whether sufficient data supports the opinion and whether
6    the opinion comports with other evidence in the record. See 20 C.F.R.
7    §§ 404.1527, 416. 927.

8    Nonetheless, the medical opinion of plaintiff's treating
9    physician is entitled to special weight. Reddick v. Chatter, 157 F.3d
10   715, 725 (9th Cir. 1998). Even when no other medical evidence
11   contradicts that opinion, the ALJ must present clear and convincing
12   reasons for disregarding the opinion of a treating physician. See
13   Andrews, 53 F.3d at 1041; see also Montijo v. Secretary of Health and
14   Human Services, 729 F.2d 599, 601 (9th Cir. 1984). When the treating
15   doctor's opinion is contradicted by another doctor, the Commissioner
16   may not reject the treating physician's opinion without providing
17   specific and legitimate reasons supported by substantial evidence in
18   the record. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); see
19   also Saelee v. Chater, 94 F.3d 520 (9th Cir. 1996). Specific and
20   legitimate reasons can be set forth by a "detailed and thorough
21   summary of the facts and conflicting clinical evidence, stating [the
22   ALJ's] interpretation thereof, and making findings." Reddick v.
23   Chater, 157 F.3d 715, 725 (9th Cir. 1998). More than just rendering
24   conclusions, the ALJ must set forth interpretations and explain why
25   his interpretations, rather than the physician's, are correct. Id.
26   ///

27   **1.   Dr. Stokes**
28   Medical records indicate that Dr. Stokes, an orthopedic surgeon,

treated plaintiff from February 8, 2001 to March 13, 2003. (AR at 352-406, 424-28). On January 15, 2002, Dr. Stokes completed a Primary Treating Physician's Final Evaluation with Permanent and Stationary Ratings ("Final Evaluation"), in conjunction with plaintiff's worker's compensation claim. (AR 352-57). In the Final Evaluation, Dr. Stokes diagnosed plaintiff with "Myofascial strain, lumbar spine with 3 mm disc protrusion L4-5 and 4-5 mm L5-S1." (AR at 355). Dr. Stokes found that plaintiff received the maximum benefit from the treatment provided, her lumbar spine reached a permanent and stationary plateau, and she was disabled. (Id.). Dr. Stokes found plaintiff to be in constant slight to moderate pain. (Id.). Dr. Stokes also found that plaintiff was precluded from heavy work and that she had lost approximately 50 percent of her pre-injury capacity with respect to stooping, lifting, pushing, pulling, climbing, and other activities involving comparable physical effort. (Id.). With respect to her work status, Dr. Stokes recommended that plaintiff return to vocational rehabilitation. (AR at 356).

Over one year later, on March 13, 2003, Dr. Stokes completed a Physical Residual Functional Capacity Questionnaire ("Questionnaire") on behalf of plaintiff. (AR at 424-28). In the Questionnaire, Dr. Stokes rendered the same diagnoses as he did in the Final Evaluation and found her prognosis to be guarded. (AR at 424). Significantly, Dr. Stokes found plaintiff's pain and other symptoms to be severe enough to often interfere with her attention and concentration and that she would experience marked limitation in dealing with work stress. (AR at 425-26). Dr. Stokes also found that plaintiff could sit and stand/walk for less than two hours total in an eight-hour work day with normal breaks and would require unscheduled breaks lasting

30 minutes two to three times per day. (AR at 426-27). Finally, Dr. Stokes opined that plaintiff's impairments would cause her to be absent from work approximately two times per month. (AR at 428).

The ALJ rejected Dr. Stokes' residual functional capacity assessment outlined in the Questionnaire. (AR at 24). The ALJ noted that Dr. Stokes' opinion in the Questionnaire that plaintiff could sit for less than two hours in a workday was much more restrictive than his opinion in the Final Evaluation that plaintiff's only limitation was that she lost 50 percent of her pre-injury capacity for heavy lifting. (Id.). The ALJ also noted that Dr. Stokes completed the Questionnaire more than a year after his treatment relationship with plaintiff had ended. As such, the ALJ wrote that he "prefer[ed] to rely on the detailed report of Dr. Stokes made at the time he was treating [plaintiff], rather than the brief assessment made more than one year later." (Id.).

The ALJ's rejection of Dr. Stokes' March 2003 assessment more than one year after he last treated plaintiff lacks merit. (AR at 24). While the ALJ may consider the extent of the treating relationship when weighing a medical opinion, courts consider a variety of other factors as well. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (1996)(factors to be considered in determining weight of medical opinions include length, nature, and extent of treatment relationship; supportability; consistency; and specialization). As noted above, medical records indicate that Dr. Stokes served as plaintiff's treating physician from February 8, 2001 to January 15, 2002, during which time he examined plaintiff three times and reviewed the five examinations and progress reports of chiropractors. (AR at 352-406). Additionally, Dr. Stokes reviewed, summarized, and

9

evaluated plaintiff's medical records in lengthy, detailed reports totaling approximately 38 pages. (AR at 359-78, 382-400). Overall, the medical records indicate that Dr. Stokes was the physician with the longest and most extensive treating relationship with plaintiff. Moreover, the Questionnaire contained a detailed assessment of plaintiff's functional capacities, while the Final Evaluation addressed plaintiff's capacity in a conclusory manner. Additionally, as an orthopedic surgeon, Dr. Stokes specializes in plaintiff's impairment, namely pain and loss of motion in her lumbar spine. (AR at 355). Given Dr. Stokes' treatment history with plaintiff, his specialization, and the thoroughness of his prior reports, the Court finds that the ALJ's rejection of Dr. Stokes' assessment in the Questionnaire on the basis of a relatively brief gap in treatment is not clear and convincing in light of the strength of the other factors.

**2. Dr. Szany**

Medical reports indicate that Dr. Szany, a chiropractor, treated plaintiff from July 24, 2000 to December 27, 2002. (AR at 394-400, 419-23). Dr. Szany noted that plaintiff's condition was chronic, permanent, and stationary. (AR at 419). Dr. Szany recommended a treatment plan of physiotherapy and specific manual manipulation on a monthly basis or as needed. (AR at 420). Ultimately, Dr. Szany noted that plaintiff could return to modified work, with restrictions that she not lift over 20 pounds or sit or stand for over 20 minutes. (Id.). While these limitations would presumably preclude plaintiff from a full range of sedentary and light work (AR at 26), the ALJ failed to reject them.

The social security regulations do not consider chiropractors as

a "source[] who can provide evidence to establish an impairment." 20 C.F.R. 404.1513(a) (emphasis added). Nonetheless, 20 C.F.R. Section 404.1513, subdivision (d)(1), explicitly states that an ALJ may consider a chiropractor's opinion to determine how a plaintiff's impairment affects the plaintiff's ability to work:

> Other sources. In addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. Other sources include, but are not limited to --
>
> (1) Medical sources not listed in paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, naturopaths, <u>chiropractors</u>, audiologists, and therapists)

20 C.F.R. 404.1513(d)(1) (emphasis added). As such, while the ALJ <u>may</u> rely on the chiropractor's opinion, he is not required to do so. The ALJ committed no error in failing to evaluate or reject Dr. Szany's opinion.

**C.   <u>Reversal and Remand is Appropriate</u>**

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the Court. <u>McAlister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989). Remand is appropriate where additional proceedings would remedy defects in the ALJ's decision, and where the record should be developed more fully. <u>Id</u>; <u>see</u> <u>also</u> <u>Rodriguez v.</u>

11

Bowen, 876 F.2d 759, 763 (9th Cir. 1989); Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990). An award of benefits is appropriate where no useful purpose would be served by further administrative proceedings, see Gamble v. Chater, 68 F.3d 319, 322-23 (9th Cir. 1995), where the record has been fully developed, see Schneider v. Commissioner of the Social Security Administration, 223 F.3d 968, 976 (9th Cir. 2000); Ramirez v. Shalala, 8 F.3d 1449, 1455 (9th Cir. 1993), or where remand would unnecessarily delay the receipt of benefits. See Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).

In this case, the Court finds remand appropriate. On remand, the ALJ must give clear and convincing reasons for rejecting the assessment of plaintiff's treating physician. Once he has done so, the ALJ can then determine whether plaintiff's impairments prevent her from performing her past relevant work. If so, the ALJ must then decide whether plaintiff retains the residual functional capacity to perform work that exists in significant numbers in both the local and national economies.[2]

---

[2] In the Joint Stipulation, plaintiff also argues that the ALJ erred by (1) failing to properly evaluate plaintiff's pain, exertional limitations, and use of medication, as well as the possible side effects of the medication; (2) failing to properly evaluate plaintiff's subjective symptoms and rationale in accordance with the disability regulations; (3) failing to question the vocational expert and evaluate important testimony that should have been given; (4) improperly using the Appendix 2 Grid Rules; (5) failing to properly evaluate plaintiff's mental status; and (6) failing to evaluate the combined effects of all impairments. As explained above, however, the ALJ's failure to give clear and convincing grounds for rejecting Dr. Stokes' opinion constitutes sufficient reason to remand this case. Moreover, depending on the outcome of the proceedings on remand, the ALJ will have an opportunity to address plaintiff's other arguments. In any event, the ALJ should consider all the issues raised by plaintiff in the Joint Stipulation when determining the merits of plaintiff's case on remand.

**ORDER**

The Court, therefore, VACATES the decision of the Commissioner of Social Security Administration and REMANDS this action for further administrative proceedings consistent with this Memorandum Opinion and Order.

DATED: September 20, 2006

                                      /s/
                              JENNIFER T. LUM
                              UNITED STATES MAGISTRATE JUDGE